# Exhibit 14

1099 NEW YORK AVENUE, NW SUITE 900 WASHINGTON, DC 20001-4412

JENNER&BLOCK LLP

March 3, 2025

**VIA EMAIL ONLY**

P. Benjamin Smith
Acting Director
Indian Health Service
5600 Fishers Lane
Rockville, MD  20857

Charlie Galbraith
Tel  +1 202 639 6089
CGalbraith@Jenner.com

> Re:   *Southcentral Foundation's Delivery of MCH Services Under Section 325*

Dear Acting Director Smith:

In preparation for this week's informal conference with the Indian Health Service (IHS), Southcentral Foundation (SCF) would like to ensure that IHS has a clear understanding of SCF's position regarding its right to deliver pediatric and women's health specialty and subspecialty services, including maternal fetal medicine, gynecologic oncology, and pediatric subspecialties (collectively, "MCH Services"), under Section 325(d) of Public Law 105-83. For purposes of efficiency, this letter is focused solely on the first and second sentences of Section 325(d). However, SCF is prepared to discuss SCF's entire final offer, including all positions that support IHS's acceptance of its MCH Services amendment.

**A.      Section 325(d)**

Because Section 325(d) is central to this discussion, the language is quoted below. For ease of reading, the statute is divided into five separate numbered paragraphs:

> [1] Cook Inlet Region, Inc., through Southcentral Foundation (or any successor health care entity designated by Cook Inlet Region, Inc.) pursuant to Public Law 93–638 (25 U.S.C. 450 et seq.), as amended, is hereby authorized to enter into contracts or funding agreements under such Public Law for all services provided at or through the Alaska Native Primary Care Center or other satellite clinics in Anchorage or the Matanuska–Susitna Valley without submission of any further authorizing resolutions from any other Alaska Native Region, village corporation, Indian Reorganization Act council, or tribe, no matter where located.

> [2] Services provided under this paragraph shall, at a minimum, maintain the level of statewide and Anchorage Service Unit services provided at the Alaska Native Primary Care Center as of October 1, 1997, including necessary related services performed at the Alaska Native Medical Center.

[3] In addition, Cook Inlet Region, Inc., through Southcentral Foundation, or any lawfully designated health care entity of Cook Inlet Region, Inc., shall contract or enter into a funding agreement under Public Law 93–638 (25 U.S.C. 450 et seq.), as amended, for all primary care services provided by the Alaska Native Medical Center, including, but not limited to, family medicine, primary care internal medicine, pediatrics, obstetrics and gynecology, physical therapy, psychiatry, emergency services, public health nursing, health education, optometry, dentistry, audiology, social services, pharmacy, radiology, laboratory and biomedical, and the administrative support for these programs, functions, services and activities.

[4] Cook Inlet Region, Inc., through Southcentral Foundation, or any lawfully designated health care entity of Cook Inlet Region, Inc., may provide additional health care services at the Alaska Native Medical Center if such use and services are provided pursuant to an agreement with the Consortium.

[5] All services covered by this subsection shall be provided on a nondiscriminatory basis without regard to residency within the Municipality of Anchorage.

**B.     The "at or through" Clause of Section 325(d) Authorizes SCF to Provide the MCH Services at Issue Here**

The first sentence of 325(d) states that SCF may enter contracts or funding agreements "for all services provided *at or through* the Alaska Native Primary Care Center [ANPCC] . . . without submission of any further authorizing resolutions from any other" tribal entity. Section 325(d) (emphasis added). That provision authorizes SCF to provide services not only "at" ANPCC, but also "through" ANPCC, though at another physical location—as relevant here, at ANMC.

Congress used the word "through" in multiple provisions of Section 325, and those other provisions make clear that services provided "through" an organization need not be provided "at" that organization's physical location. In subsection (a), for example, Congress authorized the Consortium to enter into funding agreements "to provide all statewide health services provided by [IHS] *through* the Alaska Native Medical Center and the *Alaska Area Office*." Section 325(a) (emphases added). Similarly, subsection (c) refers to "all [PFSAs] provided *by or through* the Alaska Native Medical Center and the *Alaska Area Office*." Section 325(c) (emphases added). Medical services are not (and never have been) provided at the Alaska Area Office itself—rather, they are provided under the auspices of the Alaska Area Office but in another location. These neighboring provisions are strong evidence that Congress understood, in Section 325(d), that providing services "through" an organization was not limited to providing services at the organization's physical location.

Page 3

The second sentence of 325(d) states that "[s]ervices provided under" 325(d) must maintain the level of services "provided at the Alaska Native Primary Care Center as of October 1, 1997, *including necessary related services performed at the Alaska Native Medical Center*." Section 325(d) (emphases added).

Reading the first and second sentences of 325(d) together, then, shows that Congress intended the "at or through" clause in the first sentence to include what is covered in the second sentence: any "necessary" services "related" to those at ANPCC but provided at another physical location: ANMC. The MCH services easily fit the bill.

Nothing else in Section 325(d) undermines this reading. The third sentence states that SCF can contract to provide primary care services at ANMC. That does not take away from the separate authority in the first sentence to provide all services—even nonprimary care services—so long as they are "at or through" ANPCC. The fourth sentence states that SCF can agree with the consortium to provide "additional services," which necessarily refer to services that do not qualify as those provided "at or through" ANPCC under the first sentence. Here, SCF is invoking its "at or through" authority in the first sentence, and thus does not have to enter into an "additional services" agreement under the fourth sentence. More broadly, this reading does not, as IHS suggests in its letter, allow SCF unilateral authority to administratively determine that *any* service it wishes to provide at ANMC is provided "through" ANMC. Instead, it tethers the scope of "through" to services necessarily related to those SCF undisputedly has authority to provide at ANPCC, but which, for practical reasons, it makes sense to physically locate at another facility.

IHS reads the "at or through" clause to require that all services must be provided at ANPCC, effectively ignoring the phrase "or through." But Congress made a deliberate choice to say more than "at," so any interpretation of the "at or through" clause must also account for the meaning of "through." Looking at Section 325 as a whole, and 325(d) in particular, shows that "at or through" includes the MCH services at issue, which SCF is providing "through" ANPCC, but at ANMC.

As set forth above, the "at or through" clause of Section 325(d) is critical to understanding SCF's rights under Section 325. We look forward to discussing these issues with IHS.

Sincerely,

*[signature]*

Charlie Galbraith

cc:   Evangelyn Castagna, Alaska Area Director, Indian Health Service
      April Kyle, President and CEO, Southcentral Foundation
      Stephanie Aicher, General Counsel, CIRI